IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:05-cr-20 |
| | ) | |
| JAMES RAY ROUNDTREE | ) | |

## **MEMORANDUM AND ORDER**

The defendant is charged with being a convicted felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) [*see* Doc. 1]. On June 30, 2005, the Honorable H. Bruce Guyton, United States Magistrate Judge, filed a 26-page Report and Recommendation (R&R) [Doc. 21] in which he recommended that defendant's motion to suppress [Doc. 12] be denied; thus, he recommended that the firearm and ammunition recovered from the glove box of the automobile which the defendant was driving on November 16, 2004, as well as any and all statements made by the defendant after or in conjunction with his arrest be admitted at the trial of this case.

This matter is presently before the court on defendant's timely and exceptionally well briefed objections to the R&R [*see* Doc. 22], and the government's equally well briefed response to those objections [*see* Doc. 24]. As required by 28 U.S.C. § 636(b)(1), the court has now undertaken a *de novo* review of those portions of the R&R to which defendant objects. Furthermore, in considering the merits of defendant's objections, the court has carefully reviewed defendant's original memorandum in support of his motion to suppress [Doc. 12], the government's response to that motion [Doc. 13], the defendant's supplemental memorandum [Doc. 18], and the government's supplemental response [Doc. 19]. And, although not required to do so, the court has reviewed pertinent portions of the transcript of the suppression hearing before Judge Guyton on May 5, 2005 [*see* Doc. 17]. The court also heard argument on defendant's objections on August 15, 2005.

For the reasons that follow, the court will sustain in part and overrule in part defendant's objections, thereby accepting in part and rejecting in part the R&R. The court will further recommit this matter to Judge Guyton for the specific and sole purpose of conducting a further hearing to allow the government an opportunity to introduce proof regarding the drug dog's reliability and training. In taking this action, the court agrees with the government that it was not incumbent upon the government to present any evidence regarding that drug dog's reliability and training during the earlier suppression hearing because the defendant had not raised those

2

issues in his initial papers or at any time prior to that hearing. Nevertheless, the defendant has done so now. Out of an abundance of precaution, therefore, the court is constrained to recommit this issue to Judge Guyton so that he can issue a supplemental report and recommendation. A few preliminary observations and findings are now in order.

I.

First, the court finds that the defendant's detention had not escalated into an arrest when his girlfriend's vehicle was searched. Consequently, the "search incident to arrest" doctrine is not applicable to this case. The court respectfully rejects that portion of the R&R which concludes otherwise and sustains defendant's corresponding objection on that issue. The court's finding is based on the following evidence in this record:

>     (1) Officer Terry Pate, who is with the Knoxville Police Department (KPD), stopped the defendant's vehicle based primarily on the fact that the defendant was not wearing his seat belt;
>
>     (2) The defendant had no driver's license at the time of the traffic stop, although it was later determined that the defendant did have a valid driver's license;
>
>     (3) The defendant could produce no registration papers for this vehicle;

3

(4) The offenses of driving without a seat belt and of driving without a driver's license are misdemeanor offenses which rarely, if ever, result in the driver actually being arrested; rather, individuals guilty of those offenses are routinely issued citations;

(5) When Officer Pate handcuffed defendant and placed him in the back of the police cruiser, Officer Pate did not read the defendant his *Miranda* rights;

(6) Officer Pate told the defendant that he was "being detained" when he placed him in the back of his police cruiser; he did not tell the defendant that he was being arrested [*see* Doc. 17, p.20];

(7) Officer Pate handcuffed the defendant and placed him in the back of the police cruiser because Pate personally knew the defendant, was familiar with the defendant's prior criminal history, believed that the defendant had prior convictions for violent crimes[1] and was known to have fled during past arrests;

(8) Officer Pate was writing a citation only for the defendant's violations prior to the arrival of the K-9 unit; and

(9) Finally, and most significantly, no KPD officer conducted a search of this vehicle until after the K-9 unit had arrived and the drug dog had purportedly alerted on the vehicle.

This last point is critical because if the defendant were actually under arrest prior to the arrival of the K-9 unit, there would have been no need to wait for that unit's arrival to conduct a search of the vehicle. The officers could have searched the vehicle incident to the defendant's arrest. But they did not because

---

[1]There are six previous felonies set forth in this indictment [*see* Doc. 1].

they never considered the defendant to be under arrest at that time. Nor does this court.

Additionally, in concluding that the defendant had not been arrested prior to the search of the vehicle, the court recognizes that Officer Pate had the discretion under T.C.A. § 55-50-351 to effect an arrest for the failure of the defendant to have a valid driver's license on his person. Again, however, Officer Pate was preparing a citation only prior to the arrival of the K-9 unit. There is nothing in this record to suggest that Officer Pate intended to arrest the defendant for these minor offenses.

The court recognizes too that there are times when placing a defendant in handcuffs and in the back of a police car could, along with other circumstances, transform a *Terry* stop into an arrest. Nevertheless, the Sixth Circuit has observed as follows:

> Detention in a police car does not automatically constitute an arrest. *See, e.g., United States v. Parr*, 843 F.2d 1228, 1230 (9th Cir. 1988) (finding no per se rule that detention in a police car is tantamount to an arrest); *United States v. Thompson*, 597 F.2d 187, 189-90 (9th Cir. 1979) (motorist's committing traffic infractions and his inability to produce identification at the subsequent traffic stop justified his detention in a police car while an identification search took place); *United States v. Rodriguez*, 831 F.2d 162, 166 (7th Cir. 1987) (detention in patrol car for several minutes

5

>is merely a normal part of police procedure for identifying delinquent drivers and does not constitute a custodial arrest).

*United States v. Bradshaw*, 102 F.3d 204, 211-12 (6th Cir. 1996) (footnotes omitted). Further, a suspect may be detained in a police cruiser until the purposes of an initial traffic stop are completed. *Id.* at 212. Activities such as radio checks and issuing the citation are also within the bounds of an initial stop. *Id.* Moreover, "when police officers reasonably fear that suspects are armed and dangerous, they may order the suspects out of a car and may draw their weapons when those steps are 'reasonably necessary for the protection of the officers.'" *Houston v. Clark County Sheriff Deputies John Does 1-5*, 174 F.3d 809, 814-15 (6th Cir. 1999) (quoting *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993)). The Sixth Circuit in *Houston* also observed that the use of handcuffs does not exceed the bounds of a *Terry* stop "so long as the circumstances warrant that precaution." *Id.* at 815.

Here, Officer Pate came close to drawing his weapon on the defendant, eventually electing to place him in handcuffs and in the back of his vehicle "[f]or my safety and his." [*See* Doc. 17, p.13]. The court views this only as prudent precautionary work by Officer Pate given his personal knowledge of the defendant and his criminal record. There is nothing about Officer Pate's actions in this particular case that transform defendant's detention into an arrest. Defendant's

6

arrest did not take place until after the drug dog alerted and the firearm and ammunition were discovered.

II.

The second point which the court must make concerns the length of detention. The defendant continues to argue that Officer Pate exceeded the bounds of the traffic stop and unnecessarily prolonged the defendant's detention in order to allow the K-9 unit sufficient time to arrive at the scene of the traffic stop. The K-9 unit arrived just over 15 minutes after the initial stop of this automobile. Even though the defendant was apparently detained for a couple of minutes after the purposes of the initial traffic stop were completed, the court finds that Officer Pate possessed reasonable suspicion to extend defendant's detention after that point in time. The court's conclusion on this issue is supported by the following evidence in this record:

> (1) Officer Pate initially observed the vehicle at issue traveling slowly down an alley adjacent to houses reputed to be locations for drugs and prostitutes;
>
> (2) Officer Pate testified that the defendant was "overly nervous" as compared to most individuals whom he has stopped [*see* Doc. 17, p.8];
>
> (3) Most telling, the defendant did not initially look in the glove box for the registration when it was requested (where most people keep their registration) and, after Officer Pate's second request to check the glove box, the

7

defendant just cracked the glove box and turned his body as if to shield the glove box from Officer Pate's view;

(4) Officer Pate testified that the defendant did not actually look in the glove box but merely stuck his hand inside and then closed it quickly; and

(5) Finally, the court cannot ignore the fact that Officer Pate personally knew the defendant, knew of his criminal record, and that the defendant in fact was on an officer safety list due to his history as a violent offender.

Therefore, based on the totality of the circumstances, *see United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001), the court finds that Officer Pate had specific and articulable facts indicating that the defendant may have committed a crime. The court agrees with Judge Guyton that certain of the above facts, *i.e.*, "traveling in the alley, nervousness, and the unusual behavior regarding the glove box" [*see* Doc. 21, p.21] provided reasonable suspicion to permit Officer Pate to detain the defendant for an additional two minutes after receiving all of the necessary information regarding this vehicle, thereby allowing the K-9 unit time to arrive. Officer Pate's reasonable suspicion is further reinforced by his personal knowledge of the defendant and his prior record. Defendant's objections to the contrary will be overruled, and the R&R on this issue will be accepted.

Thus, the remaining critical questions are whether the drug dog which alerted on this vehicle was properly trained and whether it was reliable, thereby

8

providing probable cause for the search of this vehicle. It is for that reason that this matter must be recommitted to Judge Guyton for a further hearing on this sole issue.[2]

### III.

For the reasons foregoing, the court finds that the defendant was not arrested prior to the arrival of the K-9 unit but was merely being detained; further, the court finds that Officer Pate had specific and articulable facts indicating that the defendant may have committed a crime so that Officer Pate properly detained the defendant for an additional couple of minutes after receiving all of the necessary information regarding the vehicle at issue, thereby allowing time for the K-9 unit to arrive.

Thus, defendant's objections to the R&R [Doc. 22] are hereby SUSTAINED IN PART and REJECTED IN PART whereby the R&R [Doc. 21] is ACCEPTED IN PART and REJECTED IN PART, as more fully explained above. Additionally, this matter is hereby RECOMMITTED to Judge Guyton for the sole

---

[2] The court recognizes, in light of this recommittal, that the trial date of September 26, 2005, will no longer be viable. Consequently, Judge Guyton should reset this matter for trial after allowing sufficient time, pursuant to the Speedy Trial Act, for a hearing as well as the issuance of a supplemental report and recommendation and sufficient time for the non-prevailing party to file objections. *See* 28 U.S.C. § 636(b)(1).

purpose of conducting a hearing to determine the drug dog's reliability and training and to issue a supplemental report and recommendation regarding same. The court will therefore stay adjudicating the merits of defendant's underlying motion to suppress [Doc. 12] until after the issuance of that supplemental report and recommendation and further consideration of anticipated objections thereto by the non-prevailing party and any further briefing by the prevailing party, if necessary. *See* 28 U.S.C. § 636(b)(1).

**E N T E R :**

                                          *s/ James H. Jarvis*
                                  UNITED STATES DISTRICT JUDGE