IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-20 |
| | ) | (JARVIS/GUYTON) |
| JAMES RAY ROUNDTREE, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

This case is before the Court for the second time on the defendant's Motion to Suppress Evidence [Doc. 12]. This motion initially was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on May 5, 2005. Following the submission of post-hearing briefs, this Court filed a Report and Recommendation [Doc. 21], in which this Court recommended that the Motion to Suppress Evidence be denied. The defendant filed objections [Doc. 22] to the Report and Recommendation. On September 12, 2005, the District Judge filed a Memorandum and Order [Doc. 27] which accepted in part and rejected in part the Report and Recommendation, and further which recommitted the matter to this Court "for the sole purpose of conducting a hearing to determine the drug dog's reliability and training and to issue a supplemental report and recommendation regarding same."

The undersigned conducted the evidentiary hearing on November 14, 2005. Assistant United States Attorney Tracee Plowell was present representing the government. Assistant Federal Defender Jonathan Moffatt was present representing the defendant, James Ray Roundtree. The

1

defendant was also present.

The defendant, James Ray Roundtree ("Roundtree"), has been indicted [Doc.1] on a one-count indictment, alleging that on November 16, 2004, the defendant was a felon in possession of a firearm and ammunition. Roundtree has moved to suppress [Docs. 12, 18, 20, and 22] all items of evidence, including any statements, stemming from the November 16, 2004 search of the car he was driving, alleging inter alia that the police drug dog which alerted on the vehicle was not well-trained or reliable and, thus, could not have provided probable cause for the vehicle search.

The government responds [Docs. 13, 19, and 24] that the drug dog was certified and reliable and that the canine's alert gave the officers probable cause to search Roundtree's car.

## I. FACTS

The government called the sole witness who testified at the November 14, 2005 hearing on this matter. Peter Franzen ("Franzen") testified that he is an officer with the Knoxville Police Department ("KPD"). Franzen has been a KPD Officer for eight (8) years, and he has been a K-9 patrol officer for two (2) years. Franzen has worked with the K-9 dog "Tasja" for two years.

Franzen testified that he successfully completed a one hundred sixty (160) hour canine certification course and a thirty-two (32) hour course in canine handling. Franzen testified that Tasja's training before coming to Knoxville included a six (6) week training course at Beck's Kennels in Wilmington, North Carolina. Franzen explained that Tasja receives continued training monthly and annually. Franzen listed the following odors which Tasja is trained to detect: Marijuana, cocaine, crack cocaine, hashish, heroin, LSD, and amphetamines. Tasja's initial certification was ninety-six percent (96%) accuracy. Tasja's current monthly training accuracy is

eighty percent (80%). Tasja's Certification was marked as Exhibit 1 to the hearing and received into evidence. It reflects a ninety-six percent (96%) accuracy rate for Tasja while being handled by Franzen. The trainers who signed the Certification state therein: "We consider this dog team a reliable source for probable cause."

Franzen testified that Tasja has a work schedule, which basically is like any other officer. Tasja works a straight evening shift, but how often she actually goes into the field depends on when other officers request the presence of a drug dog. Typically, units request a K-9 by calling the dispatcher. Franzen said that occasionally he gets called directly by other officers to come to a scene.

Franzen then explained how Tasja sniffs and alerts on a vehicle. He said that he will present the vehicle to be searched to Tasja. He stated that he then watches for changes in Tasja's behavior indicating interest in a particular area. He said that Tasja will sometimes scratch or lick an area on which she is alerting. He then explained that he fills out a document entitled "Knoxville Police K-9 Detail Use Request Report" whenever Tasja goes out to a scene or otherwise is engaged in a "sniff," for example, at a school demonstration.

Franzen testified that Tasja, since November 2003, has alerted four or five (4 or 5) times where no drugs were found and when there was no other explanation for the alert. Franzen further testified that for November 2004, the month of the Roundtree search, Tasja's monthly certification rating was one hundred percent (100%).

On cross-examination, Franzen testified that Tasja is used to detect the odor of narcotics in a vehicle, not necessarily to detect the presence, at that point in time, of narcotics in the vehicle. Franzen testified that a drug detection dog can "hit," or alert, on a microscopic amount of

3

drugs. Furthermore, Franzen explained that dogs were trained to detect the odors produced by varying amounts of drugs, the purpose being to train the dog to alert on very small as well as large amounts of drugs. Franzen testified that when Tasja alerts, there is probable cause to search the vehicle on which she has alerted.

Franzen testified that he has worked with Tasja since October 2003. He said that Tasja does not live with him but lives at a kennel with other police drug dogs. However, Franzen testified that he sees Tasja every day that he works. He further explained how he worked with Tasja on a daily basis during Tasja's training.

Franzen then explained how he knows when Tasja has alerted. Tasja alerts by giving special attention to a particular area of a vehicle. For example, Tasja may exhibit profuse sniffing, licking, and scratching. He said that Tasja's final response is to sit down. When Tasja approaches a vehicle, Franzen first does a "presentment" of an area of the vehicle, and Tasja does all of the work from that point. For example, Franzen may sweep his hand toward a particular area of the vehicle, and then the drug dog will react as trained. Franzen explained that if a drug dog alerts, that means there is an odor of drugs, even if only drug "residue" is present in the vehicle. He further explained that residue can be microscopic amounts of drugs, ashes, or other remains. Franzen explained that the KPD usually does not test residue, so that the officer does not always know what it is. However, Franzen typically makes a conclusion as to whether or not the residue is contraband based on his training and experience. Franzen explained that the officers, during the search of a vehicle, must find a detectable amount of narcotics to charge for drug possession. According to Franzen, an alert by Tasja would still be a "good hit," even if not enough drugs were detectable for a drug possession arrest, because the dog alerts based on the odor of drugs.

4

Defendant's counsel then played in Court the videotape [Ex. 2] of November 16, 2004, from Officer Franzen's vehicle. Franzen testified that the tape shows Tasja barking as she approaches the defendant's car. Franzen explained that there is no meaning to that, in other words, barking has nothing to do with "alerting" for Tasja.

Franzen further testified that as Tasja's handler, he wants to know why Tasja alerts on a vehicle. In the case of Roundtree's vehicle, Franzen looked in the vehicle and saw a discernable amount of marijuana seeds on the floorboard of the passenger side of the vehicle. Franzen testified that he confiscated those seeds and wrote in a "confiscation report" that he had done so. Franzen testified that he did not have the residue, which he recovered from the vehicle, tested. He said that the seeds which he confiscated were marijuana seeds, based on his training and experience. On the videotape, Franzen is heard to say that he has found "ashes and shit" in the car. Franzen further testified that he thought the dog alerted on the trunk, on the passenger side, and on the driver's side. His conclusion from that was that the occupants of the car had been smoking marijuana in the car and that the odor had permeated throughout the vehicle.

Defendant's counsel then played in Court the videotape [Ex. 3], which was from the vehicle of Officer Terry Pate ("Pate").[1] As that tape was played, Franzen testified that the defendant was in the back seat of Officer Pate's car when Franzen arrived. Franzen then stated that the videotape shows him pointing to various areas of the defendant's car. He explained that this was "presentment" to Tasja and that Tasja then did a check of that area. He then testified that the videotape shows Tasja alerting on the vehicle. Franzen confirmed that Tasja is not trained to detect

---

[1] This videotape was marked as Exhibit 1 during the May 5, 2005 hearing on the defendant's Motion to Suppress.

or alert for the presence of handguns.

The Knoxville Police K-9 Detail Use Request Report on the Roundtree matter was marked as Exhibit 4 and received into evidence. Franzen reviewed Exhibit 4 and testified that it was his oversight not to have stated in the report exactly where on the car Tasja alerted. He further testified that residue was found only on the driver's side of the vehicle not in the trunk or on the passenger side.

Franzen testified that an alert is considered to be "confirmed" if the officer finds drugs or drug residue inside of the vehicle. Franzen said that an alert on prescription medication also will be documented as a confirmed alert. Finally, he stated that he considers an alert coupled with an admission by the car's occupant that someone had used drugs in the car to be a confirmed alert.

At that point in the hearing, defendant's counsel marked as Collective Exhibit 5 all of the Knoxville Police K-9 Detail Use Request Reports involving Tasja between November 23, 2003, and October 27, 2004, which indicated that Tasja had alerted. Franzen then went through the reports individually and explained why Tasja had alerted in each case. While going through these documents, Franzen identified four occasions when Tasja had alerted which could not be confirmed through the detectable presence of drugs or drug residue, or by an admission by an occupant of the vehicle as to the occupant's recent drug use or proximity to drug use so as to explain the odor of drugs in the vehicle. Collective Exhibit 5 was received into evidence.

On re-direct examination, Franzen explained why Tasja would alert on prescription drugs. He testified that certain prescription drugs have components with amphetamines and other controlled substances. Franzen also explained why the KPD does not "drug test" residue. He

6

explained that the KPD tests when drug charges will be brought, but if there is only residue in the vehicle, it is not worth the time and trouble of the KPD to do tests.

The government then marked as Collective Exhibit 6 and introduced into evidence the Knoxville Police K-9 Detail Use Request Reports between November 23, 2003 and November 29, 2004, when Tasja did not alert on a vehicle and where no drugs were found. Franzen then testified as to the difference between an "unconfirmed report" versus a "false positive." He explained that an unconfirmed report is an alert in the field. In this situation, there is no way of knowing what source of odor may have been in the vehicle so as to be the basis for the alert. On the other hand, a false positive only occurs in training, and in a controlled environment, where it can be known for sure that a dog has alerted where there should not have been an alert. The government then introduced into evidence as Collective Exhibit 7, all of the training records of the KPD which relate to Tasja.

## II. ANALYSIS

The Supreme Court has held that a dog sniff of items located in a public place is not a "'search' within the meaning of the Fourth Amendment." United States v. Place, 462 U.S. 696, 707 (1983). "A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." United States v. Navarro-Camacho, 186 F.3d 701, 706 (6th Cir. 1998); see also United States v. Page, 154 F. Supp. 2d 1320, 1326 (M.D. Tenn. 2001) (characterizing this holding as well-settled). "[A]n alert in the context of a canine narcotics sniff indicates that narcotics are present in the item being sniffed or have been present in such a way as to leave a detectable odor." United States v. Boxley, 373 F.3d 759, 761 (6th Cir. 2004).

7

Nevertheless, "[f]or a positive dog reaction to support a determination of probable cause, the training and reliability of the dog must be established." United States v. Diaz, 25 F.3d 392, 394 (6th Cir. 1994). Evidence of a dog's training and reliability may be in the form of testimony as to the dog's record by the dog's handler. Boxley, 373 F.3d at 761. The Sixth Circuit has also held that the government does not have to show that the dog is one hundred percent accurate. Id. Instead, "[w]hen the evidence presented, whether testimony from the dog's trainer or records of the dog's training, establishes that the dog is generally certified as a drug detection dog, any other evidence, including the testimony of other experts, that may detract from the reliability of the dog's performance properly goes to the 'credibility' of the dog." Diaz, 25 F.3d at 394; see also Boxley, 373F.3d at 761 (concluding that "after it is shown that the dog is certified, all other evidence relating to his accuracy goes only to the credibility of the testimony, not to the dog's qualifications").

The government's position in the present case is that Tasja is certified and reliable, and therefore credible. It argues that Exhibit 5 shows ninety (90) alerts by Tasja prior to the Roundtree search, and that only four (4) of those alerts were unconfirmed. The government asserts that this demonstrates approximately a ninety-six percent (96%) "accurate" rate for Tasja. Therefore, the government argues that Tasja is reliable as to the detectable odor of drugs, and thus credible for the purpose of establishing probable cause for the search of Roundtree's vehicle.

The defendant's position is that Exhibit 5 should be analyzed differently. The defendant notes that Exhibit 5 shows, out of ninety (90) alerts: Thirty-nine (39) were alerts on "detectable" amounts of drugs; twenty-three (23) were alerts on drug residue; fifteen (15) were alerts on the reported odor of drugs or odor of "smoke"; six (6) were prescription medicine alerts; four (4)

8

were unconfirmed; and three (3) were neither confirmed or unconfirmed (because Franzen and Tasja left the scene after Tasja alerted but before the search occurred). The defendant argues that only the thirty-nine (39) alerts on "detectable" amounts of drugs should count to Tasja's credit, thereby yielding an accuracy rate of only around forty-two percent (42%). Based on this argument, the defendant asserts that Tasja is not credible.

The defendant's argument is not supported by controlling case law, and it must be rejected. For Tasja's alert in this case to have given probable cause for the search, Tasja must be certified and reliable. There is no dispute in this case that Tasja is a properly certified drug dog and that she held that certification at the time she alerted on Roundtree's vehicle. As cited above, Sixth Circuit case law holds that a dog handler's testimony that a drug detection dog is "generally certified" is sufficient to establish the dog's training and reliability. See Diaz, 25 F.3d at 394; Boxley, 373 F.3d at 761. In the present case, the Court finds that Franzen presented credible testimony that Tasja was certified. Franzen's testimony is corroborated by Tasja's Narcotics Certification [Ex. 1], dated November 21, 2003, which states that Tasja "exceeded the certification standards of 90%." The Court notes that this certification occurred only approximately one year before the Roundtree search. Moreover, Franzen testified that Tasja received additional training on a monthly and yearly basis. He stated that her accuracy rate for November 2004, the month of the Roundtree search, was one hundred percent (100%). Based upon this evidence, the Court finds that Tasja was well-trained and reliable.

Despite her certification and training, the defendant challenges Tasja's reliability and credibility based upon her performance in the field. Considering Tasja's performance in the field, the Court must conclude that Tasja is reliable and credible, and that she was so on November 16,

9

2004. As discussed above, an alert by a drug detection dog "indicates that narcotics are present in the item being sniffed or have been present in such a way as to leave a detectable odor." Boxley, 373 F.3d at 761. The facts in Boxley underscore that the odor of drugs, rather than only a detectable amount of drugs or even drug residue, is sufficient to support an alert by a drug dog. In Boxley, the dog's trainer testified that drug dogs alert to the odor of drugs, not to the drugs themselves. Id. There, the dog in question had alerted on the defendant's pocket. Id. There were no drugs in the defendant's pocket, but drugs were found nearby. Id. The trainer concluded that the defendant had the odor of drugs on his person. Id. The court proceeded to find that the dog was reliable based upon the trainer's testimony of its training and certification. Id. Although the question on appeal related to the lack of documentation to support the trainer's testimony regarding the dog's training, the Sixth Circuit did not deem the alert to odor to be a "false" alert. Instead, the court's analysis affirms that drug dogs alert to the odor of drugs: "[I]n order to admit evidence of a dog's alert to an *aroma* of drugs, it is not necessary to provide the dog's training and performance records." Id. (emphasis added).[2]

Under the standard established in Boxley, Tasja must be given credit for any alert where it is confirmed that a detectable amount of drugs, including prescription drugs, or residue are found in the vehicle, or where the origin of the odor is admitted or explained by the vehicle's

---

[2]At the November 14 hearing, the defendant relied upon a case from the Southern District of Ohio to argue that a dog's alert to trace amounts of drugs must be counted as an unsuccessful alert. See United States v. Huerta, 247 F. Supp. 2d 902 (S.D. Ohio 2002). In Huerta, the court held that there was no evidence before it to support a finding that the drug dog therein was trained to detect residual odors or trace amounts of drugs. Id. at 909. This is distinguishable from the present case in which Franzen testified that Tasja was trained to alert to the odor of drugs and was trained to alert to microscopic amounts of drugs. In any event, even if this case were not distinguishable, Boxley is the controlling authority.

occupants. Even if the Court agreed with the defendant not to credit Tasja with the three alerts which were neither confirmed nor unconfirmed, this merely lowers Tasja's accuracy rate to approximately ninety-two percent (92%). Thus, taking the defendant's categorization of Tasja's alerts as true, the Court finds that Tasja's record of alerts in the field for the one-year period preceding her sniff of Roundtree's car establishes that she is reliable. Moreover, the Court has already found Franzen's testimony to be credible. To the extent that the defendant seeks to challenge Tasja's credibility, as opposed to her reliability, the Court finds that a ninety-two percent accuracy rate does not detract from the credibility of her alert.

Finally, in the event that the District Court should disagree with this Court's conclusion that the various categories of alerts (alerts to detectable amounts of illegal drugs, prescription drugs, residue, and odor) all count as successful alerts, the Court will undertake to make factual findings of how many of the ninety alerts fall within each category. In so grouping the alerts, the Court has placed the alert in the category with the greatest amount of drugs that the findings reported by Franzen and the reports support. In other words, if multiple reasons for an alert are given in the report or in Franzen's testimony, the Court has placed the alert first in the detectable drugs category, second in the prescription drugs category, third in the drug residue category, and fourth in the reported odor/smoke category, depending upon the reasons given. The Court has also grouped alerts into two additional categories: (1) unconfirmed alerts, which are alerts in which the subsequent search revealed no drugs, residue, or reported/detected odor, and (2) unknown alerts, which are alerts that were neither confirmed nor contradicted by a subsequent search. After reviewing the Knoxville Police K-9 Detail Use Request Reports in Exhibit 5 in light of Franzen's testimony, the Court finds that the ninety alerts break down into the following categories:

11

41 Alerts to Detectable Amounts of Illegal Drugs[3];

7 Alerts to Prescription Drugs[4];

22 Alerts to Drug Residue[5];

12 Alerts when Officer Detected or Occupants Reported Odor or Smoke in Location[6];

5 Unconfirmed Alerts[7]; and

3 Unknown Alerts[8].

The Court notes that although five of these categories differ from the numbers argued by the defendant, the Court still finds that Tasja had a ninety-one percent (91%) accuracy rate under the Court's categorization. The Court reiterates that it is making these findings with regard to the

---

[3]These detectable drug alerts correspond to the reports dated November 28, 2003; December 11 and 31, 2003; January 2, 9, 22, and 24, 2004; March 5, 9, 17, 18, 19, 23, and 25, 2004; April 3, 2004; May 31, 2004; June 3, 5, 5, 19, 19, and 29, 2004; July 6, 16, 16, 20, 24, and 24, 2004; August 6, 24, and 27, 2004; September 2, 2, 6, 10, 16, and 18, 2004; and October 1, 1, 22, and 27, 2004.

[4]These prescription drug alerts correspond to the reports dated March 3, 11, and 23, 2004; June 18, 2004 (methadone, which Court notes is a synthetic narcotic used in drug treatment, found in trunk); August 12 (Xanax pill) and 19, 2004; and October 2, 2004.

[5]These residue alerts correspond to the reports dated November 23, 2003; January 21, 2004; March 1, 5, 12, and 23, 2004; April 3 and 4, 2004; June 4, 23, and 29, 2004; July 27, 2004; August 4, 4, and 15, 2004; September 11, 12, 22, and 29, 2004; October 8 and 26, 2004; and November 16, 2004 (Exhibit 4).

[6]These odor alerts correspond to the reports dated January 7 and 18, 2004; March 5, 2004; April 10, 2004; May 31, 2004; June 3 and 25, 2004; July 9, 22, and 29, 2004; and October 1, 10, and 27, 2004 (alert on bag with cash, owner arrested with drugs at another location).

[7]These unconfirmed alerts correspond to the reports dated March 9, 2004; June 19, 2004; July 23, 2004; August 18, 2004; and October 27, 2004.

[8]These alerts for which the success is unknown correspond to reports dated December 13, 2003; January 3, 2004; and September 6, 2004.

12

number of alerts in each category in the event that the District Court disagrees with this Court's finding regarding Tasja's accuracy rate and wishes to exclude additional categories from the total of successful alerts.

## III. CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence [**Doc. 12**] be **DENIED**,[9] on the ground that the drug dog has been found by the Court to be certified, reliable, and credible.

Respectfully submitted,

    s/ H. Bruce Guyton
United States Magistrate Judge

---

[9]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).